Filed 6/5/24

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br>v.<br><br>JOSEPH LEE FISH,<br><br>　　　Defendant and Appellant. | A168087, A168088<br><br>(Lake County Super Ct.<br>Nos. CR961859, CR965203) |

Joseph Fish pled guilty to one felony count of making a criminal threat (Pen. Code,[1] § 422) and was released on his own recognizance pending sentencing. Before he could be sentenced, however, Fish was charged in a separate case and convicted by a jury of misdemeanor domestic battery (§ 243, subd. (e)(1)), felony assault with a deadly weapon (§ 245, subd. (a)(1)), and felony dissuading a witness (§ 136.1, subd. (c)(1)). In a consolidated hearing, Fish was sentenced to a total term of 10 years, 8 months in prison. The court also imposed the minimum mandatory statutory fines and assessments. Fish's appeals in both cases have been consolidated for all purposes.

In Appeal No. A168088, Fish contends that his convictions for domestic battery and assault with a deadly weapon should be reversed because the

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I.B, II and III.

[1] All undesignated statutory references are to the Penal Code.

trial court erred in instructing the jury.  He also contends that his sentence on those counts violated section 654's prohibition against multiple punishment and that the fines and assessments imposed by the trial court should be vacated because the trial court abused its discretion in finding he is able to pay them.  In Appeal No. A168087, Fish reasserts his argument regarding his ability to pay the fines and assessments imposed in connection with his conviction for making a criminal threat.  Finding no prejudicial error, we affirm, but in the published portion of the opinion, we explain that, when a unanimity instruction is warranted for the charged offense, it should also be expressly extended to any lesser included offense for which guilt may similarly rest on more than one act.

## BACKGROUND

In October 2021, Fish was charged with (1) making criminal threats (§ 422, subd. (a)); (2) brandishing a weapon (§ 417, subd. (a)(1)); and (3) possession of drug paraphernalia (Health & Saf. Code, § 11364).  In December 2021, as part of a negotiated disposition, Fish pled guilty to one count of making a criminal threat in exchange for a grant of probation.  Fish was advised that his conviction would qualify as a "strike" for purposes of sentencing on any future felony conviction.  The parties stipulated as a factual basis for the plea that on September 25, 2021, Fish told the victim that he was going to bash her head in with a rock and kill her.

In March 2022, Fish was arrested and charged with several offenses committed against a different victim.  As subsequently amended, Fish was charged by information in count 1 with corporal injury to a cohabitant (§ 273.5, subd. (a)); in count 2, with assault with a deadly weapon (§ 245, subd. (a)(1)); in count 3, with assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)); and in count 4, with dissuading a witness (§ 136.1,

2

subd. (c)(1)). The information further alleged that Fish's December 2021 conviction for making a criminal threat constituted a serious felony for purposes of sentencing under the "Three Strikes" law (§ 1170.12) and alleged various aggravating sentencing factors.

At trial, the victim testified that she and Fish had been in a relationship for 16 or 17 years and had one child together. On March 24, 2022, she and Fish had a lengthy argument. After several hours of arguing, she sat down. Fish was standing over her, when he suddenly hit her in the face with his closed fist. She reported that the punch caused some swelling but testified that it "wasn't like a man punch or anything." After the punch, they walked away from each other in separate directions. Two hours later, she saw Fish approaching carrying metal bar or rod. She was afraid and started to run. When she glanced back in his direction, the metal rod ricocheted off the ground, hitting her in the face and cutting her cheek. After being arrested, Fish called the victim from jail and told her not to cooperate with the prosecution and stated that she would be murdered if she appeared in court.

The jury found Fish guilty of assault with a deadly weapon (the metal rod) and dissuading a witness. The jury found him not guilty of corporal injury to a cohabitant, but guilty of the lesser included offense of domestic battery (§ 243, subd. (e)(1)). The jury found Fish not guilty of assault with force likely to produce great bodily injury. The jury also made true findings as to the strike prior and the aggravating sentencing factors.

Following the jury trial, the court considered and rejected Fish's motion to withdraw his guilty plea in the strike case. Thereafter, Fish was sentenced together on both cases. The trial court imposed a four-year term for his conviction of assault with a deadly weapon (the low term of two years,

doubled for the strike prior); six years for dissuading a witness (the full consecutive middle term of three years, doubled for the strike prior); and eight months for the criminal threats conviction to which he pled guilty (one-third of the middle term of two years). The trial court also imposed a concurrent term of 364 days for his domestic battery conviction.

With respect to the three counts on which Fish was found guilty by the jury, the trial court indicated that it intended to impose a $300 restitution fine (§ 1202.4); a $300 stayed parole revocation fine (§ 1202.45); $120 in court operations assessments (§ 1465.8); and $90 in criminal conviction assessments (Gov. Code, § 70373). Fish objected on the ground that he was unable to pay these fines and assessments. His counsel explained that he was transient at the time of the offenses and had not been employed since 2019. The trial court overruled his objection, stating: "According to the probation report, his physical health is good, his mental health is good, and he can do physical labor. So I do find that he has the ability to pay the fines and fees. I am imposing the minimum fines and fees in this case." As for the case in which Fish pled guilty, the trial court imposed "concurrent" mandatory, minimum statutory fines and assessments.

## DISCUSSION

### I. Instructional Error (A168088)

Fish contends that the Court erred by failing to give a unanimity instruction as to the domestic battery charge (the lesser offense to corporal injury to cohabitant charged in count 1) and by failing sua sponte to instruct the jury that it could consider the "limited" nature of the victim's injury in determining whether the metal rod he threw at the victim was a deadly weapon under count 2.

4

" ' "It is settled that in criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence" ' and ' "necessary for the jury's understanding of the case." ' " (*People v. Brooks* (2017) 3 Cal.5th 1, 73.)  Whether a jury has been properly instructed is a question of law reviewed de novo.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.)  When an appellate court reviews a potentially incomplete or misleading instruction, the relevant inquiry is " 'whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction.' [Citations.] ' " ' "[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " ' [Citation.] The reviewing court also must consider the arguments of counsel in assessing the probable impact of the instruction on the jury." (*People v. Young* (2005) 34 Cal.4th 1149, 1202.)

## A. Unanimity Instruction

The trial court instructed the jury that Fish was charged in count 1 with inflicting a physical injury on the mother of his child that resulted in a traumatic condition.  A traumatic condition was defined as "a wound or other bodily injury, whether minor or serious, caused by the direct application of physical force."  The jury was also instructed that the crime of domestic battery is a lesser offense of the charged offense, which requires only that defendant touch the victim in a "harmful or offensive manner."  The jury was given the following unanimity instruction under CALCRIM No. 3500: "The defendant is charged with inflicting an injury on the mother of his child that resulted in a traumatic condition in Count 1.  [¶]  The People have presented evidence of more than one act to prove that the defendant committed this offense.  You must not find the defendant guilty unless you all agree that the

People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

In closing argument, the prosecutor identified the two theories of liability under count 1 and emphasized, "It's important that while you're deliberating and if you do come to a unanimous guilty verdict as to Count 1 that everyone also agrees on what act constituted that corporal injury, the punching, her being hit by the rod, perhaps both. But everyone has to agree on what act and everyone has to have a unanimous guilty for a verdict on that act. That's to protect against maybe ten jurors believe the punch caused the corporal injury but aren't so sure about the metal rod and another ten maybe believe the rod caused the corporal injury but not the punch. So it's important that everyone agrees on the act that caused that potential corporal injury, not just everyone agrees he did something." The prosecutor continued, "Count 1, which is corporal injury and domestic violence, has one lesser included, effectively simple domestic battery. Any harmful or offensive contact could be considered domestic violence. It doesn't have to result in injury to be a criminal offense. So let's say hypothetically, you guys go back in chambers and everyone agrees, yes, he punched her. Or yes, he threw the rod at her, but I don't think it caused injury. It is still illegal to punch someone, even if it didn't cause injury. It's still illegal to throw a metal rod at someone, even if it didn't cause injury."

Fish contends the trial court violated his right to due process by failing to expressly instruct the jury that the unanimity instruction applied not only to the charged offense but also to the lesser included offense of domestic battery. The Attorney General acknowledges that the unanimity instruction was not expressly extended to the lesser charge but argues that there is no reasonable likelihood that the jury would have understood the unanimity

6

instruction to apply only to the charged offense and not to the lesser included offense.

The parties have not cited any authority addressing whether a unanimity instruction, given as to the charged offense, must be expressly extended to a lesser included offense when the same potential acts form the basis of each offense. Our own research has not identified any published California cases on the question either, but at least one other state court has held that, while a separate unanimity instruction is preferable, the failure to give it did not constitute plain error when there was nothing in the record that would have suggested to the jury that the same requirement did not apply to the lesser included offense. (See *People v. Abdulla* (Colo. App. 2020) 486 P.3d 380, 391 [although unanimity instruction referenced only sexual assault and not unlawful sexual contact, the instruction "logically encompassed" the lesser included offense].)

Had the trial court generally instructed the jury as to the requirement for a unanimous verdict on count 1, without expressly indicating the charged offense, we would be quicker to agree that a reasonable juror would understand the instruction as applying to both the charged offense and the lesser offense. However, by explicitly naming the charged offense and omitting the lesser charge, the instruction arguably injected confusion into the deliberative process. (See *People v. Milosavljevic* (2010) 183 Cal.App.4th 640, 648 [where unanimity instruction expressly identified the multiple counts to which it applied, court would not presume that the jurors inferred that the omission of another count "was merely an oversight by the court and, on their own, decided to require unanimity regarding the specific act constituting that offense"].) This confusion could have been avoided by modifying the pattern instruction to read: "The defendant is charged with

7

inflicting an injury on the mother of his child that resulted in a traumatic condition in Count 1, *and the lesser included offense*. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense *and the lesser included offense*. You must not find the defendant guilty *of either offense* unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

Although such clarifying language was absent, we give some weight to the fact that the prosecutor's argument suggested that unanimity was required for both the charged and lesser included offense. (See *Middleton v. McNeil* (2004) 541 U.S. 433, 438 [it is reasonable to assume that counsel's argument clarified an ambiguous jury instruction, particularly when it is the prosecutor's argument resolving an ambiguity in favor of the defendant]; *People v. Young* (2005) 34 Cal.4th 1149, 1202 ["The reviewing court also must consider the arguments of counsel in assessing the probable impact of the instruction on the jury"].) The prosecutor did not expressly state that the unanimity instruction applied to the lesser included offense, but his account of the circumstances under which the jury should convict on it, which immediately followed his discussion of the unanimity requirement, was also premised on unanimity: "So let's say hypothetically, you guys go back in chambers and everyone agrees, yes, he punched her. Or yes, he threw the rod at her, but I don't think it caused injury."[2] By arguing that the jury should

---

[2] Court reporters have a difficult task in applying punctuation to the speaker's words. "Although we rely upon the court reporter to accurately record the words spoken in court, we are not bound by the court reporter's interpretation of the speaker's intended meaning as shown by the punctuation inserted by the reporter." (*People v. Huggins* (2006) 38 Cal.4th 175, 190.) In our view, given the context and grammar, the prosecutor's

convict on the lesser included offense if everyone agreed on the act but did not believe it caused injury, the prosecutor reduced the likelihood of confusion about whether the unanimity instruction was applicable. Nonetheless, we echo our sister court in Colorado in emphasizing that a trial court should expressly instruct the jury that the unanimity requirement applies both to the charged offense and to any lesser included offense when a guilty finding may rest on more than one act.

Even if we assume error in this case, however, we find that it was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18.) "Under *Chapman*, [the failure to give a unanimity instruction is harmless] '[w]here the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that [the] defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless.' [Citation.] For example, where the defendant offered the same defense to all criminal acts and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error. [Citation.] . . . The error is also harmless '[w]here the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence.' " (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 577.)

---

words quoted above would more appropriately have been rendered as one sentence rather than two: "So let's say, hypothetically, you guys go back in chambers and everyone agrees, yes, he punched her, or yes, he threw the rod at her, but I don't think it caused injury. It is still illegal to punch someone, even if it didn't cause injury. It's still illegal to throw a metal rod at someone, even if it didn't cause injury."

9

Here, the record provides no rational basis, by way of argument or evidence, for the jury to have distinguished between the two acts offered in support of the crime of domestic battery.  (See *People v. Diedrich* (1982) 31 Cal.3d 263, 283 [failure to give unanimity instruction is harmless "where the jury's verdict implies that it did not believe the only defense offered"].)  In closing, Fish's counsel did not differentiate between the two acts that formed the basis of his conviction on count 1 or provide a specific defense to the lesser charge of domestic battery.  Beyond a general suggestion that the victim had personal biases and motivations that lessened her overall credibility, Fish's counsel questioned the credibility of the victim's account of the incident with the rod—noting, for example, that the victim did not see Fish throw it and that she could describe it only generally.  In finding Fish guilty of assault with a deadly weapon, the jury necessarily rejected that argument.  Fish provided no evidence or argument suggesting that he did not intend for the rod to touch the victim when he threw it at her.  The victim's testimony, once credited by the jury, necessarily establishes that Fish committed a battery in two ways:  He punched her in the face and he caused her to be struck with the thrown object.  There was an "offensive" "touch[ing]" either way.  Particularly in light of the overall verdict, Fish identifies no basis on which a rational juror could conclude that she was being truthful about one but not the other.  Accordingly, the failure to expressly extend the unanimity instruction to encompass the lesser offense was harmless beyond a reasonable doubt.

## B. Assault with a Deadly Weapon

Fish was convicted on count 2 with assault with a deadly weapon based on his act of throwing the metal rod at the victim.  The jury was instructed pursuant to CALCRIM No. 875 that a deadly weapon is "any object,

instrument, or weapon that is used in such a way that it is capable of causing and likely to cause death or great bodily injury. [¶] In deciding whether an object is a deadly weapon, consider all the surrounding circumstances." Citing *In re B.M.* (2018) 6 Cal.5th 528, Fish contends the court erred in failing sua sponte to instruct the jury that it can consider the victim's " 'limited injury or lack of injury' in determining whether an object qualifies as a 'deadly weapon.' "

In *In re B.M.*, *supra*, 6 Cal.5th at page 536, the Court reversed the defendant's conviction for assault with a deadly weapon on the ground that there was no substantial evidence that the butter knife used in the assault was a deadly weapon. The court clarified the principles that guide the analysis of whether an object is a deadly weapon under section 245. (*Id.* at p. 533.) First, for an object to qualify as a deadly weapon, it must "be used in a manner that is not only 'capable of producing' but also ' "likely to produce death or great bodily injury." ' " (*Ibid.*, italics omitted.) Next, "the determination of whether an object is a deadly weapon . . . must rest on evidence of how the defendant actually 'used' the object." (*Id.* at p. 534.) Finally, "although it is appropriate to consider the injury that could have resulted from the way the object was used, the extent of actual injury or lack of injury is also relevant." (*Id.* at p. 535.) With respect to this last principle, the court observed that "limited injury or lack of injury may suggest that the nature of the object or the way it was used was not capable of producing or likely to produce death or serious harm." (*Ibid.*) Applying these principles, the court found that there was no substantial evidence that the butter knife was a deadly weapon, in part because the manner in which the weapon had been used—"slicing" at the victim and applying only moderate pressure to victim's blanketed legs—did not produce any injury. (*Id.* at pp. 531, 536–538)

11

Contrary to Fish's characterization, we do not believe that the decision in *In re B.M.* "pronounced new law on the use of the victim's injury—or lack thereof—in deadly-weapon assault cases" such that the court was required sua sponte to modify CALCRIM No. 875. As set forth above, the jury was instructed that, in determining whether an object, as used by the defendant, was capable of producing or likely to produce death or serious harm, it could consider *all relevant circumstances*, which necessarily included the nature of the injury actually inflicted. Fish has not cited any authority concluding that, following the decision in *In re B.M.*, the definition of a deadly weapon in CALCRIM No. 875 fails to fully inform the jury regarding the definition of a deadly weapon. In our view, CALCRIM No. 875, as given in this case, satisfied the trial court's duty to instruct sua sponte on all relevant points of law.

Even assuming, however, that some additional clarification was warranted, the failure to do so in this case was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [an error is harmless unless it is "reasonably probable" the outcome would have been different in the absence of the error]; *People v. Hendrix* (2022) 13 Cal.5th 933, 942 [*Watson* standard of prejudice "applies to ' " ' "incorrect, ambiguous, conflicting, or wrongly omitted instructions that do not amount to federal constitutional error' " ' "].)

The victim described the object as a metal rod, bar, or pipe that was about two feet long and had a thickness somewhere between a fishing pole and a baseball bat. It was a rusty brown color, round and hollow, and looked like it had been bent or cut off of something. Nothing in the record suggests that Fish purposefully threw the object at the ground with the intent to scare rather than injure the victim. The victim estimated that Fish was about 50 feet away (which she described as a point beyond the courtroom doors

12

from where she was sitting while testifying), and she was running away from him. It had to have been thrown with some force in order to reach her. When she glanced back in his direction, the object ricocheted off the ground only about a foot away from her, hitting her in the cheek and causing a one-inch cut that, although it healed completely, was significant enough that she felt the need to go to the hospital by ambulance. She testified that she "had a lot of blood coming out" and "was hurting really bad." Given this record, there is no reasonable likelihood that the jury would have concluded that this object was not capable of causing and likely to cause serious harm merely because it happened to strike her only after bouncing off the ground first and inflicted minimal injury. (See *In re B.M., supra*, 6 Cal.5th at p. 535 ["it is appropriate in the deadly weapon inquiry to consider what harm could have resulted from the way the object was actually used"].)

## II.    Section 654

Under section 654, subdivision (a), "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." In determining whether section 654 applies, "the trial court is entitled to make any necessary factual findings not already made by the jury." (*People v. Deegan* (2016) 247 Cal.App.4th 532, 545.) While a jury verdict must be unanimous, the jury is not required to make findings as to which of multiple acts supported its verdict. (*Id.* at p. 547 [jury is not required "to make the factual findings that determine whether the trial court will stay sentences under section 654 on one or more of multiple convictions"]; *People v. Williams* (2001) 25 Cal.4th 441, 450, disapproved on another ground by *People v. Barnwell* (2007) 41 Cal.4th 1038, 1052 ["General verdicts are required in criminal cases, in order to permit the

13

jury wide latitude in reaching its verdict"].)  Accordingly, " 'in the absence of some circumstance "foreclosing" its sentencing discretion . . . , a trial court may base its decision under section 654 on *any* of the facts that are in evidence at trial, without regard to the verdicts.' " (*People v. Deegan, supra,* at p. 545.)

As discussed above, the prosecutor argued that Fish committed domestic battery under count 1 by either punching the victim or throwing a metal road at her, or both.  Fish was convicted of assault under count 2 based solely on the act involving the metal rod.  Fish was sentenced to concurrent terms on these counts.  At the sentencing hearing, neither the parties nor the court discussed whether section 654 applied.

On appeal, Fish argues that because it is impossible to tell from the record which act formed the basis of his conviction on count 1, remand is necessary so that the court can determine whether the jury's verdict rested on "the metal-rod incident rather than the face-punch incident" and, if so, which count to stay under section 654.  The Attorney General argues that there is no need for a remand because the trial court, by not staying count 1, impliedly found that section 654 does not apply because count 1 rested, at least in part, on the punch.

Although Fish did not raise a section 654 objection during the sentencing hearing, " '[e]rrors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal.' " (*People v. Hester* (2000) 22 Cal.4th 290, 295.)  If the trial court does not stay a sentence pursuant to section 654, and offers no factual basis for its decision, we presume the court made the necessary findings to impose separate sentences without violating the statutory proscription against multiple punishment.  (*People v. Mejia* (2017)

14

9 Cal.App.5th 1036, 1045.) A trial court's imposition of multiple sentences must be sustained on appeal so long as its factual findings, express or implied, of multiple acts are supported by substantial evidence. (*People v. Cruz* (2020) 46 Cal.App.5th 715, 737.) We review the trial court's imposition of multiple sentences " 'in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence.' " (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378, *People v. Mejia, supra,* at p. 1046.)

Fish acknowledges these rules of appellate practice but argues that it would be inappropriate and unfair "to presume that the trial court considered the applicability of section 654 to counts 1 and 2" in this case because the trial court "affirmatively erred at the matter at the heart of the section 654 inquiry" by failing to give a unanimity instruction as to the lesser offense on count 1. We disagree that the trial court's failure to expressly identify the lesser included offense in the unanimity instruction—irrespective of whether it amounted to error in this case—provides a basis to jettison the usual presumption that the court had in mind its obligations under section 654 at sentencing. The possibility that a reasonable juror could have been confused by the instruction's reference to the charged but not the lesser included offense does not establish that the trial court itself did not understand that unanimity was required or that, at sentencing, it "overlooked the need to consider the section 654 applicability of that count vis-à-vis count 2," as Fish contends. Accordingly, we presume the court found that the domestic battery conviction was based on the punch so that section 654 was not applicable.

## III. Assessments and Fines

Fish contends that the trial court's imposition of fines and assessments in this case was "arbitrary and irrational." He argues that the undisputed

evidence establishes that he is indigent and that the court abused its discretion by relying on his "theoretical ability to earn prison wages without any sort of evidence about appellant's eligibility for in-custody employment or the availability of employment."

While the relevant statutes do not require trial courts to ascertain a defendant's ability to pay before imposing only the statutory minimums, this court and others have concluded that constitutional protections impose such a requirement on the trial court.  (*People v. Cowan* (2020) 47 Cal.App.5th 32, 46, review granted June 17, 2020, S261952 [Eighth Amendment's protection against excessive fines prohibits the imposition of these assessments when the trial court determines that the defendant lacks the ability to pay]; *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1168–1169 [reaching same conclusion based on due process].)  It was Fish's burden, however, to prove his inability to pay the relevant fines and assessments.  (*People v. Cowan, supra*, at pp. 49–50; *People v. Kopp* (2019) 38 Cal.App.5th 47, 96.)  To meet that burden, Fish was required to "present evidence of his . . . inability to pay the amounts contemplated by the trial court."  (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490.)  In determining his ability to pay, the court could consider all relevant circumstances and was not limited "to considering only whether [he] ha[d] the ability to pay at the time of the sentencing hearing."  (*People v. Kopp, supra*, at p. 96 [in determining a defendant's ability to pay fines and assessments, it is appropriate for the court to consider the wages that may be earned in prison]; *People v. Santos* (2019) 38 Cal.App.5th 923, 933 [factors to consider in determining ability to pay may include, among others, the defendant's "realistic ability to earn prison wages or obtain employment"]; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397 [noting that because the statute of limitations on the enforcement of judgments does

not apply to a restitution fine, a defendant may lack present ability to pay costs of court-appointed counsel yet have ability to pay a restitution fine in the future]; see also *People v. Burnett* (2004) 116 Cal.App.4th 257, 261 [in determining a defendant's ability to pay the sex offender fine, "the trial court may consider all evidence relevant to ability to pay, including the amount of any fine or restitution ordered and the defendant's potential future income"].)

Here, although the evidence in the record establishes that Fish was unemployed and without assets at the time of his convictions, Fish did not present any evidence to show that he would not be able to pay the fines and assessments imposed going forward. To the contrary, the probation report indicates that Fish graduated from high school and has an associate degree from a local community college. Between 2013 to 2018, Fish worked in security at a casino, and in 2019 he worked both as a yard worker at a mill and as a manager at a grocery store. While the probation report indicates that Fish regularly uses illegal substances, Fish reported that he is in treatment for his drug addiction and that otherwise "he is of good health, having no medical, dental or mental health issues." Accordingly, substantial evidence supports the trial court's finding that Fish is capable of paying the minimal fines and assessments imposed by the court. (See *People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140.)[3]

---

[3] The parties agree, and the record reflects, that the court intended to impose a total of $510 in fees and assessments. While that amount correctly reflects the minimum, mandatory fees and assessments on the case tried to the jury, it does not include any fees or assessments for his conviction in the other case. Section 1202.4 requires a restitution fine be imposed on each case (see *People v. Soria* (2010) 48 Cal.4th 58, 66 [restitution fines are to be imposed in each case resolved by a plea bargain]; *People v. Sencion* (2012) 211 Cal.App.4th 480, 483 [restitution fund fine may be imposed only once per case]), and the court operations and criminal conviction assessments must be

Fish's citation to prison unemployment statistics and prison wage schedules does not alter this conclusion. First, none of this information was presented to the trial court at the sentencing hearing, so we decline to consider it for the first time on appeal. At that hearing, Fish's trial counsel stated that Fish "can obviously earn some money in custody," arguing only that it was "unlikely that he is going to have the means to pay the fines in any short order." Second, the trial court did not state that it was relying solely on Fish's ability to earn wages while in prison. The court found simply that he is capable of working. (See *People v. Cervantes* (2020) 46 Cal.App.5th 213, 229 [ability to pay includes the ability both to obtain prison wages and to earn money after release from custody].) Fish was 41 years old when sentenced to just under 11 years with over 2 years in credits at that time. The trial court's conclusion that Fish had the ability to pay $510 in fines and assessment is not arbitrary or irrational.

### DISPOSITION

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
HITE, J. *

---

imposed on each count. (§ 1465.8; Gov. Code, § 70373.) The trial court's order does not cite the authority under which it ordered that the fees and assessments imposed in Fish's plea case run "concurrent" to those imposed in the other case. However, because the People did not object in the trial court or on appeal, any claim as to this potential error has been forfeited. (*People v. Tillman* (2000) 22 Cal.4th 300.)

* Judge of the Superior Court of the City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18

| | |
|---|---|
| Trial Court: | Superior Court of Lake County |
| Trial Judge: | Honorable J. David Markham |
| Counsel for Defendant and Appellant: | Aaron J. Schechter, under appointment by the Court of Appeal. |
| Counsel for Plaintiff and Respondent: | Rob Bonta<br>Attorney General of California<br>Lance E. Winters<br>Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>Senior Assistant Attorney General<br>Catherin A. Rivlin<br>Supervising Deputy Attorney General<br>Gregg E. Zywicke<br>Deputy Attorney General |